## UNITED STATES DISTRIC COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

Edward Honig,

Plaintiff,                    Case No.: 14-cv-7548

v.

Cardis Enterprises International N.V.,
Cardis Enterprises (U.S.A.)              Jury Trial Demanded
International Inc., Romlight International
(U.S.A.) Inc., Choshen Israel LLC,
Aaron David Fischman, Avi Tokayer,
Steven Hoffman, and Lawrence Katz,

**CIVIL COMPLAINT**

Defendants.

------------------------------------------------------------x

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, EDWARD HONIG ("Plaintiff" or "Honig"), who respectfully files this Complaint for Damages against defendants AARON DAVID FISCHMAN, AVI TOKAYER, STEVEN HOFFMAN, CARDIS ENTERPRISES INTERNATIONAL N.V., CARDIS ENTERPRISES (U.S.A.) INTERNATIONAL INC., ROMLIGHT INTERNATIONAL (U.S.A.) INC., CHOSHEN ISRAEL LLC, and LAWRENCE KATZ, ESQ., (collectively, "Cardis defendants"), representing as follows. Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia,* the investigation conducted by and through Plaintiff's attorneys, documents issued by the defendants, and statements made by the defendants and their agents.

### NATURE AND SUMMARY OF THE ACTION

1.    Plaintiff brings this securities fraud action against Aaron David Fischman, Avi Tokayer, Steven Hoffman, and Lawrence Katz Esq. ("Individual

Defendants"), all current or former officers and directors of the defendants Cardis Enterprises International N.V., Cardis Enterprises (U.S.A.) International Inc., Romlight International (U.S.A.) Inc., and/or Choshen Israel LLC, seeking to recover damages caused by defendants' violations of federal securities laws.

2.    Plaintiff Honig purchased in excess of 1.5 million shares of Cardis International N.V. stock in 2012 and 2014, based on false statements made by the individual defendants. Cardis International N.V. operates in the United States as Cardis Enterprises (U.S.A.) International Inc., and these companies are, upon information and belief, one and the same.

3.    Cardis International N.V., a foreign Corporation, with headquarters  in Amsterdam, Netherlands  ("Cardis" ), and locally incorporated affiliates, e.g., Cardis Enterprises International (U.S.A.) Inc., a Delaware corporation, held itself out to be a creator and franchisor of  software products that were  new cost effective technology, and valuable to the low value credit charge industry.

4.    During the same approximate time period, Plaintiff Honig purchased substantial numbers of shares of Romlight International stock, also based on false statements made by the individual defendants.

5.    Romlight International (U.S.A.) Inc., a Delaware  Corporation registered to do business in the State of New York, with its principle executive office located in Albion, New York, claimed  to  be  a  manufacturer of  lighting products that were to provide new, less costly and more effective lighting technology to the lighting industry.

6.    Choshen Israel LLC, a New York business entity registered  in New York ("Choshen"),   is and was a  parent corporation affiliated with the other corporate

defendants with its corporate offices located at 445 Central Avenue, Cedarhurst, New York.

7.   The Cardis Defendants lured investors--including Honig--through misrepresentations of fact made orally by agents of the Cardis Defendants at the specific instruction of specific Individual Defendants.   Intentional misstatements of fact were also contained in the private placement memoranda used in private placement offerings.   Specifically, the Individual Defendants made material representations to Plaintiff regarding the readiness, value, and sale of products incorporating so-called "patented" technology,  that Plaintiff relied upon in making his  investments, orally and in writing. Defendant claimed that it had software ready for the market; that the corporation was "about to go public;" and that Honig's investment would be used for marketing and product development purposes.

8.   In reality, neither Cardis nor Romlight had a working software, or other product.

9.   Honig relied on the misrepresentation that Cardis had made actual and substantial sales when investing in Cardis. In reality, Cardis it had no such sales.

10. In addition, the Cardis Defendants used a Private Placement Memorandum to garner investments from Honig and others, which stated that the proceeds of the investment money raised had been, and would be used for sales, marketing  and product development.

11.  Funds generated through the private placement memoranda had not, in fact, been used for sales, marketing, and product development.

12.  The Cardis Defendants did not use any of the money generated for sales, marketing and product development as promised. Instead, all of the funds raised went

directly to the Cardis Defendants in the form of compensation to officers and directors fees, and in many cases, going into the bank accounts of Individual Defendants without any consideration whatsoever.

13.   In sum, none of the proceeds went to the Company. All of Honig's and the other investors' money went into to Cardis Defendants individually.

14.   Upon information and belief, the current value of Honig's Cardis shares is $0.

## JURISDICTION AND VENUE

15.   The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated, thereunder by the SEC (17 C.F.R. § 240.10b-5).

16.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.  § 1331 and § 27 of the Exchange Act.

17.   Venue is proper in this Judicial District pursuant to § 27 of the Exchange Act, and 28 U.S.C. § 1391(b).

18.   Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

19.   The Cardis Defendants marketed and sold securities in violation of the Exchange act.

20.   In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

21.  Plaintiff Edward Honig is an individual Cardis shareholder, and resident of New York State, owning substantial numbers of shares of Cardis stock.

22. Defendant Aaron David Fischman, according to a current FINRA Brokercheck report, was censured in 1995 and barred from any association with any FINRA member since that time, as the result of market surveillance committee complaint no. CMS940104. That complaint, in 11 "Causes," alleged violations of FINRA's Rules of Fair Practice by Fischman and others, in manipulating the price of a non-NASDAQ security quoted on the OTC Bulletin, and related offenses, including violations of the Exchange Act and failure to disclose compensation to customers.

23. Steven Hoffman ("Hoffman") was at all relevant times a broker of registered securities, but in fact was not registered with FINRA since 1995.

24.  Defendant Lawrence Katz, Esq., was at all relevant times acting as a broker of registered securities but in fact was not registered with FINRA. Defendant Katz was also acting as Company attorney and would receive and issue checks, including checks from Honig, on behalf of the Company as "Lawrence Katz, Esquire."

25.  The incorporated defendants are sometimes referred to collectively herein as the "Corporate Defendants" or "the Company."

**DISSEMINATION OF FALSE AND MISLEADING INFORMATION**

26.  The Individual Defendants, because of their positions with the Corporate Defendants as officers and directors, possessed the power and authority to control the contents of private placement offerings of Cardis International and Romlight International, including their private memoranda, internal accounting procedures, and representations made by their selling agents when securities were sold to Honig.

5

27. Each of the Individual Defendants either disseminated the false and misleading information contained in the Private Placement Memoranda and directed the false and misleading statements made by their sales force, or knew that these statements were being made to potential investors and were materially false or misleading.

28. The Individual Defendants are liable for the false statements pleaded herein, as each one of those statements was "group- published" information, the result of the collective actions of the Individual Defendants.

29. Each of the Defendants acted with scienter in that each defendant knew or recklessly disregarded the fact that the documents and statements issued or disseminated in the name of the Company were materially false and misleading or omitted to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

30. Each defendant knew that such statements or documents would be issued or disseminated to investors and knowingly and substantially participated in or acquiesced in the making, issuance or dissemination of such statements or documents as a primary violation of the federal securities laws.

31. By virtue of their receipt or reckless disregard of information reflecting the true facts regarding Cardis and Romlight, their control over and/or receipt and/or modification of Cardis', Romlight's, and Choshen's materially misleading statements, and/or their other associations with the Corporate Defendants, each defendant knowingly or recklessly participated in the fraudulent scheme and conduct alleged herein.

## DEFENDANTS' FRAUDULENT STATEMENTS

32.   From 2007 through 2014, Cardis, through its various corporate affiliates, engaged various registered broker-dealers as a placement and selling agents for the Company's private placement offerings.

33. The information given to those agents by the Individual Defendants and their associates, was materially untrue in that claims that working software had been completed, and that sales of working software to end users, were known to be false.

34. Honig reasonably relied upon these and other material misrepresentations made by Defendants.

35. The Company also misrepresented the use of the proceeds of Honig's and other investors' funds. Defendants stated that the vast majority of the proceeds raised in the private placement offerings had been, and would be used for branding, marketing and product development. Instead, however, as the defendants knew, all of those proceeds went directly to Company directors and officers as executive salaries and directors' fees to the Defendants. Upon information and belief, none of the money Honig and other investors invested went to the Company. The Individual Defendants were aware of the history of the use of the proceeds and they were aware that there were no plans to use future proceeds as represented to Honig and other investors.

36. This was a brazen fraud. Had Honig known that his investment in the Company was going straight into the pockets of the Defendants, he would not have invested in the Company.

37. On or about March 5, 2014, Honig had a conversation with Defendant Fischman at the Company's offices located at 445 Central Avenue, Cedarhurst, New York, wherein Honig confronted Fischman about where his investment money in

Romlight had gone and the status of Romlight. At that time, Honig demanded an accounting with regard to his investment in Romlight and an explanation about the status of Romlight's operations.

38. Defendant Fischman explained to Honig at that time that he could not provide Honig with any of the requested information about Romlight but that he could compensate Honig for his Romlight shares by paying him with shares in Cardis.

39. During the period between March 5, 2014 and March 24, 2014, Honig reviewed a press release issued by Cardis on October 9, 2013, which claimed that it had a functional product, that "enables several consumer transactions made at different retailers to be handled with only one transaction processed through the payment network, thereby significantly lowering the overall transaction costs." It was also claimed that this supposed functional product was being used by a company called Spindle to assist it with processing credit card transactions in vending machines.

40. Upon information and belief, there was and is no such functional product and the deal with Spindle was not an arm's length transaction. Rather, it was part of Defendants' fraud.

41. During this same time period, Defendants Hoffman and Fischman orally represented to Honig and, upon information and belief, to many other Cardis investors that Cardis was engaged in extensive negotiations with investment banks and was imminently going to go public.

42. Furthermore, Fischman told Honig that Cardis was in the midst of signing a contract with MasterCard, a fact that, upon information and belief was false.

43. On March 25, 2014, Defendant Hoffman, acting on behalf of the Company, sold Honig one million eight hundred forty four thousand five hundred and fifty six (1,844,556) shares of Cardis in exchange for Honig's shares of Romlight.

44. On November 27, 2014, Honig learned he was defrauded during a conversation he had with defendant Aaron Fischman that took place at the Company's offices located at 445 Central Avenue, Cedarhurst, New York. During this conversation, Honig asked to see the Company books, records, and evidence that it even owned any patents. Aaron Fischman refused these requests.

45. When Honig then accused Fischman of engaging in a fraud whereby he was taking people's money—including Honig's—knowing that Choshen Israel, Romlight, and Cardis had no real operations, plan, or prospect for success and that these Companies were merely vehicles to enrich Individual Defendants and defraud investors, Fischman answered with deafening silence.

46. At all relevant times, the material misrepresentations and omissions made to Plaintiff, between 2007 and 2014, directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff described herein.

47. Defendants made or caused to be made materially misleading statements and omissions about the Company's business, future prospects and growth potential. The material misstatements and omissions caused Plaintiff to have an erroneous view of the Company's business, future prospects and growth potential, thus causing Plaintiff to purchase stock through 2014, and caused the damages complained of herein.

## LOSS CAUSATION

48. As detailed herein, the Defendants made false and misleading statements, and engaged in a scheme to deceive Honig and other investors by falsifying the

Company's product development information and sales numbers and misrepresenting the use of proceeds of the investors' share purchases. In truth, the Company did not have the ready product it claimed to have or the sales it claimed to have, and the proceeds of Plaintiff's share purchase went directly into the Company's directors' and officers' pockets.

49.  As a result of his purchase of Company stock, Plaintiff suffered damages as economic loss, under the federal securities laws.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder (Against All Defendants)**

50.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.  As set forth herein, Defendants carried out a plan, scheme and course  of conduct which was intended to and did: (1) deceive  Plaintiff  and  (2) cause Plaintiff  to purchase Company's stock. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52. The Defendants committed the following acts: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiff in violation of Section 10(b) of the Exchange Act and Rule  10b-5 promulgated  thereunder.

53. All of the Defendants are sued either as primary participants  in the wrongful and illegal conduct charged herein or as controlling persons as alleged below. The Defendants, individually and in concert, directly and indirectly, by the use, means,

or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and past history and future prospects of Company as specified herein.

54. The Defendants employed devices, schemes and artifices to defraud and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Company value and performance and growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Company and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon Honig and others.

55. Each of the Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Defendants were high-level executives, directors, and/or agents at the Company and/or members of the Company's management team or had control thereof; (2) each of the Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and distribution of the Company's Private Placement Memoranda; (3) each of the Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of the Defendants was aware of the Company's dissemination of

information to investors which they knew or recklessly disregarded was materially false and misleading.

56. The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the Company's true operating condition and future business prospects from investors and to defraud investors by taking the proceeds of their investments for themselves.

57. As demonstrated by the Defendants' overstatements and misstatements of the Company's sales figures and use of offering proceeds, the Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58. Plaintiff purchased Company stock in ignorance of the fact that: the Company's statements about its product and product readiness were untrue; Company's sales figures were untrue; that statements that the Company was about to go public were untrue; that the Company's representations of its use of offering proceeds were untrue; and, relying directly or indirectly on the false and misleading statements made by Defendants, Plaintiff has been damaged thereby.

59. At the time of those misrepresentations and omissions, Plaintiff was ignorant of their falsity, and believed them to be true. Had Plaintiff known the truth regarding Company's sales results and true use of proceeds, which were not disclosed by the Defendants, Plaintiff would not have purchased Company stock.

60. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

61. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in connection with his purchase of the Company's common stock which is now worthless.

62. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

**SECOND CLAIM**
**Violation of Section 20(a) of the Exchange Act**
**(Against the All Defendants)**

63. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64. The Defendants acted as controlling persons of the Company, within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the private placement memoranda and disseminated to Plaintiff and investors, the Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that were (and are) false and misleading.

65. The Defendants were provided with the statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. In particular, each defendant had direct and supervisory involvement

in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66. As set forth above, the Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

67. By virtue of their positions as controlling persons, the Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff suffered damages as a result of his purchase of the Company's stock.

68. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

### THIRD CLAIM
### Common Law Fraud
### (Against All Defendants)

69. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

70. The Defendants made material oral and written misrepresentations and/or omitted material facts necessary to make statements not misleading regarding Company's products and product readiness; sales figures; Company's plans to list its shares on a nationally traded exchange; Company's intended use of Honig's and other investors' investments; and additional subjects as described above.

71. At the time the material misrepresentations and omissions were made, the Defendants knew them to be false, or recklessly disregarded their falsity, and made them with the intention of causing Honig to deliver money to Company.

72.  Defendants were aware that the false information would be used by Honig, a known party, for the particular purpose described herein. Thus, the Defendants knew, intended, and understood that Honig would act or decide not to act in reliance on such representations and omissions.

73.  Honig received and reasonably relied on the false representations and omissions of material fact for the particular purposes described herein.

74.  Honig's reliance was foreseeable and was justified.

75.  Honig's reliance caused pecuniary loss to Honig as alleged herein.

76.  Honig is therefore entitled to damages caused by this wrongful conduct, in an amount to be determined at trial.

### FOURTH  CLAIM
### Fraud in the Inducement
### (Against All Defendants)

77.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

78. The Defendants made material oral and written misrepresentations and/or omitted material facts necessary to make statements not misleading regarding: Company's sales figures; Company's plans to list its shares on a nationally traded exchange; Company's intended use of Honig's investment; and additional subjects as described above.

79. At the time the material misrepresentations and omissions were made, Defendants knew them to be false, or recklessly disregarded their falsity, and made them with the intention of causing Honig to deliver money to Company.

80. Defendants were aware that the false information would be used by Honig, a known party, for the particular purpose described herein. Thus, the Defendants knew,

intended, and understood that Honig would act or decide not to act in reliance on such representations and omissions.

81.  Honig received and reasonably relied on the false representations and omissions of material fact for the particular purposes described herein.

82.  Honig's reliance was foreseeable and was justified.

83.  Honig's reliance caused pecuniary loss to Honig as alleged herein.

84.  Honig is therefore entitled to damages caused by this wrongful conduct, in an amount to be determined at trial.

### FIFTH CLAIM
### Accounting
### (Against All Defendants)

85.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

86.  By virtue of the promises and agreements described above and Honig's status as a shareholder of Company, Honig is entitled to a full accounting of all sales, transfers, assignments, liens, encumbrances, payments, fees, salaries or other dispositions of any and all Company funds and assets since the date of the Company's formation.

### PUNITIVE DAMAGES

87. As a direct and proximate result of the Defendants' violations alleged herein, Plaintiff has been significantly damaged in an amount to be proven at trial. Plaintiff is also entitled to an award of punitive damages as the Defendants' actions were intentional, aggravated and committed with an evil mind and with the intent to cause injury, or in reckless disregard of substantial risk of harm to the Plaintiff.

## PRAYER  FOR RELIEF

88.  WHEREFORE, Plaintiff prays  for relief and judgment,  as follows:

a)  Awarding compensatory damages in favor of Plaintiff against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in the amount to be proved at trial in excess of $2,000,000, including interest thereon;

b)  Punitive damages in the amount in excess of $2,000,000;

c)  Awarding Plaintiff his reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d)  Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

89.  Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby requests a trial by jury for all issues so triable.


Dated: December 30, 2014
        Nassau County, New York

                              Respectfully submitted,

                              Edward Honig, Plaintiff

                  By:

                              /s/ Shneur Nathan
                              SHNEUR NATHAN
                              Attorney for Plaintiff

                              Hale Law LLC
                              1000 Woodbury Road
                              Suite 106
                              Woodbury, NY 11797
                              (516)-918-4923
                              snathan@ahalelaw.com